**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

CHARLES B. HICKS

    Debtor

Case No.  11-32263

ORNL FEDERAL CREDIT UNION

    Plaintiff

v.

CHARLES B. HICKS

    Defendant

Adv. Proc. No.  12-3066

**M E M O R A N D U M**

**APPEARANCES:**    AYERS & PARKEY, ATTORNEYS
    Edward J. Shultz, Esq.
    Post Office Box 23380
    Knoxville, Tennessee  37933
    Attorneys for Plaintiff

    LAW OFFICES OF MAYER & NEWTON
    John P. Newton, Jr., Esq.
    1111 Northshore Drive
    Suite S-570
    Knoxville, Tennessee  37919
    Attorneys for Defendant

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

The Plaintiff filed the Complaint commencing this adversary proceeding on August 6, 2012, seeking a judgment in the amount of $222,005.07, plus post-petition and post-judgment interest and attorneys' fees, and for a determination that the judgment is nondischargeable pursuant to 11 U.S.C. § 523(a)(2) (2006). The Defendant filed Defendant's Answer to Complaint on September 11, 2012, asserting a number of affirmative defenses and denying that the Plaintiff is entitled to a nondischargeable judgment against him. On April 19, 2013, the Defendant filed a Motion for Summary Judgment which was denied by the court in an Order entered on January 7, 2014, supported by the accompanying Memorandum on Motion for Summary Judgment.

The trial of this adversary proceeding was held on June 10, 2014. The record before the court consists of Joint Stipulations filed by the parties on April 25, 2014, six exhibits introduced into evidence, and the testimony of four witnesses, Daniel Lovell, Barry Schultz, David Hicks, and the Defendant.

This is a core proceeding. 28 U.S.C. § 157(b)(2)(I) (2006).

## I

On July 31, 2007, the Defendant purchased a 25.4 acre tract of real property located in Roane County, Tennessee (Roane County Property) from the Gunnar Schultz Trust under the terms of a Real Estate Contract – Land (Real Estate Contract) dated July 27, 2007. TRIAL EX. 1. In order to purchase the Roane County Property, the Defendant borrowed $400,000.00 from the Plaintiff on July 31, 2007, evidenced by a Promissory Note secured by a Deed of Trust also dated July 31, 2007. TRIAL EX. 3; TRIAL EX. 4. According to the Settlement Statement, the purchase price was

$500,000.00, consisting of the proceeds of the $400,000.00 loan obtained from the Plaintiff and a $100,000.00 earnest money deposit. TRIAL EX. 19. Thereafter, on August 1, 2007, the Gunnar Schultz Trust made a payment in the amount of $100,000.00 to the Defendant.

On April 13, 2010, William Wolfenbarger filed a civil action entitled *Wolfenbarger v. Elizabeth Baily [sic], Trustee of the Gunnar Schultz Trust, Charles B. Hicks and ORNL Federal Credit Union*, No. 16683, in the Roane County Chancery Court (State Court Action), alleging forgery and asking the court, *inter alia*, to declare him the owner of the Roane County Property. COLL. TRIAL EX. 23. On May 9, 2011, the Defendant's bankruptcy case was commenced by the filing of an Involuntary Petition under Chapter 7, and the court entered the Order for Relief on September 6, 2011. At the time the Involuntary Petition was filed, the Defendant had defaulted under the terms of the Promissory Note and owed a balance of $447,005.07. On May 16, 2011, the Plaintiff filed a Cross Complaint against the Defendant in the State Court Action, seeking a judgment based upon the facts alleged in this adversary proceeding. Subsequently, an Agreed Judgment was entered in the Roane County Chancery Court on February 28, 2012, which provides, in material part:

> IN THIS CAUSE came ORNL Federal Credit Union as Cross Plaintiff and Charles B. Hicks as Cross Defendants [sic] and with respect to the Cross Complaint filed by ORNL Federal Credit Union against Charles B. Hicks announced their agreement to the entry of this Agreed Judgment, as evidenced by the signatures of counsel below, whereby Charles B. Hicks agrees to a judgment in favor of ORNL Federal Credit Union, on the promissory note dated July 31, 2007 executed by him, but not based on any fraud theory or claim, and, accordingly it is
> ORDERED ADJUDGED AND DECREED that ORNL Federal Credit Union shall have and recover judgment against Charles B. Hicks in the amount of $476,245.72 which represents the current principal balance of $400,000 and accrued interest at due on said note. Cross Defendant shall be entitled to a credit on this Agreed Judgment for the fair market value of the real property at issue in this cause upon the foreclosure thereof in accordance with Tennessee State Law. It is specifically agreed that this judgment shall not preclude ORNL Federal Credit Union

> from seeking a determination that the judgment is nondischargeable in Charles B. Hicks's bankruptcy case, No. 11-32263, currently pending in the U.S. Bankruptcy Court for the Eastern District of Tennessee. This Judgment shall also not prejudice any right of Fidelity National Title Insurance Company separately or on behalf of ORNL Federal Credit Union to pursue any claims in the Hicks Bankruptcy.

COLL. TRIAL EX. 23.[1] Following entry of the Agreed Judgment, the Plaintiff obtained relief from the automatic stay and foreclosed its lien on the Roane County Property on May 30, 2012, purchasing it with a credit bid of $225,000.00.

On August 6, 2012, the Plaintiff filed the Complaint initiating this adversary proceeding. As stated in the Pretrial Order entered on November 7, 2012, the Plaintiff seeks a determination that a foreclosure deficiency in the amount of approximately $222,005.07 as of May 9, 2011, plus interest and attorneys' fees from that date is nondischargeable pursuant to § 523(a)(2)(A),[2] with the issues being (a) whether the Plaintiff is entitled to a deficiency judgment; (b) if so, the amount; (c) whether any amount owed to the Plaintiff is nondischargeable; and (d) whether the Plaintiff complied with all contractual provisions of the loan, note, deed of trust, and state and federal laws when it foreclosed on the real property of the Defendant. Pursuant to the court's Order entered on January 23, 2014, setting the trial of this adversary proceeding, the Defendant filed Defendant's Special Defenses on January 28, 2014, asserting the following to be deemed incorporated within the Pretrial Order: (1) the Complaint fails to state a claim upon which relief can be granted; (2) the

---

[1] The court takes judicial notice, pursuant to Federal Rule of Evidence 201 of the Federal Rules of Evidence, that the Plaintiff proceeded in the State Court Action after obtaining relief from the automatic stay on October 17, 2011. The Plaintiff also entered into an Agreed Judgment against Elizabeth Bailey on February 28, 2012, in the amount of $219,341.84, and it was awarded a Final Judgment against Danny Schultz in the amount of $496,444.02 on July 5, 2012. COLL. TRIAL EX. 23.

[2] In fact, as agreed by the Plaintiff during the trial, it is not a foreclosure deficiency that is material to the Plaintiff's claim, rather it is the balance owing on the Agreed Judgment after applying the $225,000.00 credit bid for the Roane County Property at the foreclosure sale for which a determination of nondischargeability is sought.

Plaintiff's allegations fail to establish a prima facie case for the causes of action asserted including lack of specificity required for allegations of fraud; (3) the Plaintiff did not rely on the alleged misrepresentations or its loss is not proximately related to any alleged misrepresentation; and (4) the Defendant did not make false statements and specifically denies the Plaintiff's factual allegations. At trial, the parties stipulated that the Plaintiff is seeking a determination that the $251,245.72 balance of the Agreed Judgment entered in the State Court Action against the Defendant in the amount of $476,245.72, less the $225,000.00 credit bid at the foreclosure, together with attorneys' fees in the amount of $21,591.25 as of the trial date, is nondischargeable.

## II

Under § 523(a)(2)(A), an individual is not discharged from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by [] false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]"  11 U.S.C. § 523(a)(2)(A). The court construes § 523(a) liberally in favor of the Defendant and strictly against the Plaintiff, which bears the burden of proving the necessary elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654, 661, 112 L.Ed.2d 755 (1991); *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998). In order to satisfy the requirements of § 523(a)(2)(A), the Plaintiff must prove the Defendant obtained money, property, or services through material misrepresentations that he knew were false or he made with gross recklessness, that the Defendant intended to deceive the Plaintiff, that the Plaintiff justifiably relied on the Defendant's false

representations, and that the Plaintiff's reliance was the proximate cause of its losses. *McDonald v. Morgan (In re Morgan)*, 415 B.R. 644, 649 (Bankr. E.D. Tenn. 2009).

Misrepresentations are material if they contain "substantial inaccuracies of the type which would generally affect a lender's or guarantor's decision . . . [but are] not material if the creditor knows it is false or possesses information sufficient to call the representation into question." *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 791 (Bankr. E.D. Tenn. 2003) (citations and quotation marks omitted). "[T]he test for materiality is not whether the [creditor] *actually* relied on the false statement, but whether the statement was *capable of influencing*, or had a natural tendency to influence, the [creditor's] decision." *United States v. Keefer*, 799 F.2d 1115, 1127 (6th Cir. 1986).

> "[F]alse pretense" involves implied misrepresentation or conduct intended to create and foster a false impression, as distinguished from a "false representation" which is an express misrepresentation[, while a]ctual fraud "consists of any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another - something said, done or omitted with the design of perpetrating what is known to be a cheat or deception."

*Copeland*, 291 B.R. at 760 (citations omitted). "[F]alse representations and pretenses encompass statements that falsely purport to depict current or past facts." *Peoples Sec. Fin. Co., Inc. v. Todd (In re Todd)*, 34 B.R. 633, 635 (Bankr. W.D. Ky. 1983).

Fraudulent intent may be "inferred as a matter of fact" based on the totality of the circumstances when the Defendant has engaged in conduct that was "somewhat blameworthy." *Copeland*, 291 B.R. at 759. In the Sixth Circuit, intent is determined under a subjective standard. *Rembert*, 141 F.3d at 281.

> A subjective approach, of course, requires that the trier-of-fact focus solely on the individual characteristics of the debtor. Yet, like an objective approach, a subjective

> approach still entails the utilization of circumstantial evidence given that a debtor will rarely, if ever, admit to acting in a fraudulent manner; helpful in this regard are many of the traditional indicia of fraud—e.g., a suspicious timing of events, insolvency, transfers to family members or other insiders. In utilizing such indicia, however, the Sixth Court cautioned against "factor-counting," instead holding "[w]hat courts need to do is determine whether all the evidence leads to the conclusion that it is more probable than not that the debtor had the requisite fraudulent intent."

*EDM Mach. Sales, Inc. v. Harrison (In re Harrison)*, 301 B.R. 849, 854 (Bankr. N.D. Ohio 2003) (citations omitted); *see also Palmacci v. Umpierrez*, 121 F.3d 781, 788 (1st Cir. 1997) (stating that an honest belief that the representation is true, even if unreasonably so, "is an insufficient basis for deceit."). Nevertheless, mere negligence or evidence of "a 'dumb but honest' debtor does not satisfy the test." *Copeland*, 291 B.R. at 765-66 (citation and brackets omitted). Likewise,

> a broken promise to repay a debt, without more, will not sustain a cause of action under § 523(a)(2)(A). Instead, central to the concept of fraud is the existence of scienter which, for the purposes of § 523(a)(2)(A), requires that it be shown that at the time the debt was incurred, there existed no intent on the part of the debtor to repay the obligation.

*Harrison*, 301 B.R. at 854 (citations omitted). A determination of nondischargeability often comes down to the Defendant's conduct prior to, at the time of, and subsequent to the representations at issue and which witnesses are the most credible. *Copeland*, 291 B.R. at 766.

Finally, the court must also find justifiable reliance; i.e., the party seeking a determination of nondischargeability actually relied on the representations and, based upon the facts and circumstances known at the time, their reliance was justifiable. *Morgan*, 415 B.R. at 649. Whether reliance was justified is subjective, "based on the facts and circumstances surrounding each individual case[.]" *Copeland*, 291 B.R. at 766-67. "To constitute justifiable reliance, the plaintiff's conduct must not be so utterly unreasonable, in the light of the information apparent to him, that the

law may properly say that his loss is his own responsibility." *Stewart Title Guar. Co. v. Roberts-Dude*, 497 B.R. 143, 151 (S.D. Fla. 2013) (citation, quotation marks, and brackets omitted). "Under this standard, a creditor will be found to have justifiably relied on a representation even though [it] might have ascertained the falsity of the representation had [it] made an investigation." *Commercial Bank & Trust Co. v. McCoy (In re McCoy)*, 269 B.R. 193, 198 (Bankr. W.D. Tenn. 2001) (citations and quotation marks omitted).

The gravamen of the Plaintiff's argument is that the Defendant misrepresented not only the $500,000.00 purchase price in the Real Estate Contract but also that he had paid $100,000.00 earnest money to the Gunnar Schultz Trust when he had not, and that the Plaintiff relied upon this representation when making the $400,000.00 loan to the Defendant for the purchase of the Roane County Property. The Plaintiff also contends that the purchase price was misrepresented because the Defendant received $100,000.00 back from the Gunnar Schultz Trust on August 1, 2007, the day after the loan from the Plaintiff to the Defendant closed, and that the purchase price was actually $300,000.00 rather than $500,000.00. Finally, the Plaintiff argues that there is no documentation concerning this transaction between the Defendant and Danny Schultz and that the Defendant did not, when negotiating the loan, disclose to the Plaintiff the existence of an agreement with Danny Schultz for the two of them to resell the Roane County Property and split the profit between them.

Concerning the purchase price for the Roane County Property and the $100,000.00 in earnest money, the Defendant testified that he purchased the property for the $500,000.00 reflected in the Real Estate Contract and that it was only immediately prior to closing when he learned that he was purchasing the property from the Gunnar Schultz Trust rather than Danny Schultz individually. He

also acknowledged that he did not, as also reflected in the Real Estate Contract, pay $100,000.00 in earnest money to the Gunnar Schultz Trust by personal check and, in fact, did not actually pay anything to the Trust but was instead given a $100,000.00 credit for sums that were owed to him by Danny Schultz, which served as the $100,000.00 down-payment on the Roane County Property. When questioned about this practice, the Defendant testified that he had loaned Danny Schultz cash money on many occasions to assist with Mr. Schultz's car dealerships, which was confirmed through the testimony of Barry Schultz, Danny Schultz's son. The Defendant testified that he had made several cash loans to Danny Schultz beginning in 2005, and that he continued to make loans to him after purchasing the Roane County Property; however, he also acknowledged that there was no documentation concerning any of those loans. With respect to the $100,000.00 received back from the Gunnar Schultz Trust on August 1, 2007, the Defendant testified that shortly before the loan was going to be closed, Danny Schultz offered to pay him $100,000.00 in exchange for a share in the profit when the Defendant sold the Roane County Property and that Mr. Schultz was going to be bringing a buyer to the table. The Defendant testified that the arrangement was with Danny Schultz, individually, and not with the Gunnar Schultz Trust, but agreed that the payment had, in fact, come from the Trust.

Although the Real Estate Contract clearly misrepresents that the Defendant paid $100,000.00 in earnest money through a personal check when that was not the case, the court cannot, based upon the record and the testimony of the witnesses, find that the Defendant made the representation with the requisite intent to deceive or that the Plaintiff justifiably relied on the Real Estate Contract when making the loan to the Defendant. First, in order to satisfy § 523(a)(2)(A), the court must find, based

9

upon a debtor's conduct and actions, that at the time the debt was incurred and the false representations made, that he did not intend to repay the obligation. That is simply not the case here. The Defendant had a long-standing relationship with the Plaintiff, having borrowed and repaid loans for years, beginning in 1999. There is nothing in the record to indicate to the court that when the Defendant borrowed the $400,000.00 from the Plaintiff on July 31, 2007, he did so without intending to repay it. The record instead supports the Defendant's testimony that he had every intention of reselling the Roane County Property – a practice that he had done with many other lake and water properties – and that he would repay the Note to the Plaintiff at that time. Additionally, the Defendant was a credible witness, and the court believes that his negotiations with Danny Schultz occurred immediately prior to the closing, and there was no scheme to somehow defraud the Plaintiff. The Defendant's account of the events transpiring were supported by the record and the testimony of other witnesses. Barry Schultz testified that the Roane County Property had not been listed but he had been approached by three individuals about purchasing the 25 acres which Danny Schultz had initially priced at $1,200,000.00. One individual, James Sizemore, had actually visited the property three times, and on the third visit, Mr. Sizemore had asked if Danny Schultz would take $875,000.00. Barry Schultz telephoned his father, who said that he would think about it, and Barry Schultz later learned that it was at this time that his father sold the Roane County Property to the Defendant. Based upon this testimony, the court can logically deduce that Danny Schultz made the last minute arrangement with the Defendant not only to reduce his debt to the Defendant through the $100,000.00 credit but to also share in the profits of reselling the Roane County Property, knowing that he had a buyer willing to pay $875,000.00. Similarly, David Hicks, the Defendant's son and business partner at Instrument and Technologies Systems (ITS), testified that he personally knew the

10

Defendant had been purchasing the Roane County Property, that the purchase price was $500,000.00, that the Defendant was obtaining a $400,000.00 loan from the Plaintiff, and that the Defendant's down-payment had been a credit for $100,000.00 owed to him by Danny Schultz. Mr. Hicks also testified that when the Defendant received the $100,000.00 payment on August 1, 2007, he deposited the funds into ITS's bank account, and the amount was credited to the Defendant's shareholder equity account. Finally, Mr. Hicks testified that the Defendant had planned on reselling the Roane County Property and that the Schultz family was producing a buyer, but the purchase had fallen through, although Mr. Hicks had not known why.

The record likewise does not support a finding that the Plaintiff justifiably relied upon the Defendant's representation in the Real Estate Contract that he had paid $100,000.00 in earnest money when, in fact, he had been given a credit for monies owed to him. At trial, Mr. Lovell testified that the Plaintiff relied on the Real Estate Contract, that the Plaintiff's policy required an 80% loan to value, so a 20% down-payment would have been required, and that the Plaintiff had not been aware of any transactions with Danny Schultz when it agreed to make the loan to the Defendant, but had it been, the loan would not have been made. Although these statements may be accurate, the record does not support a determination that the Plaintiff actually made the loan to the Defendant based upon his representation in the Real Estate Contract which later proved to be false. The Defendant had a long-standing business relationship with the Plaintiff and had borrowed and repaid a number of loans between 1999 and 2007. As reflected in Collective Trial Exhibit 22, the Plaintiff's internal Credit Memorandum signed by Mr. Lovell on July 24, 2007, relating to the Defendant's loan, stated with respect to "Determination of Value" a $500,000.00 value for the Roane

County Property based upon an appraisal made for the Plaintiff by Woodford & Associates in July 2007, and that the $400,000.00 loan meets the 80% total loan to value ratio. COLL. TRIAL EX. 22. The Credit Memorandum also includes the Defendant's financial information as of May 1, 2007, and reflects an adjusted net worth of $10,344,000.00 for the Defendant. COLL. TRIAL EX. 22. Finally, the Credit Memorandum makes the following conclusions with respect to making the loan:

> **Management Analysis:** Charlie Hicks is an experienced investor in real estate in Knoxville and the surrounding counties. Charlie is very involved in purchasing, leasing, and selling commercial real estate and has numerous real estate contacts in the Knoxville and surrounding markets.
>
> **Market Analysis:** The Harriman market has slowly, over the years, experienced growth in the residential market. Commercial development is beginning to increase, but there is more activity in residential development. Many retirees, local and out-of-state [are] moving into the Harriman/Kingston market. There is ample property to build and the cost of the land is not as expensive as the Oak Ridge and Knoxville market. There is easy access to the interstate, secondary routes, parks, and the amenities located in the city of Oak Ridge.
>
> **Industry Analysis:** New home sales have slowed [throughout] the U.S. and local economy. The local market is not experiencing the steep decline as the overall economy, but there is a [noticeable] slowdown in new home sales in the local market when compared to previous years.
>
> **Strengths:**
> The subject property is located waterfront property
> The intent is to sale the land in five five-acre tracts
> *Financial capacity and credit history of borrower*
> Mr. Hicks plans to sale the property, not construct spec. homes
> **Weakness:** There is a DOE easement at the shoreline

COLL. TRIAL EX. 22 (emphasis added). Nothing within this Credit Memorandum supports a finding that the Plaintiff justifiably relied on the representation in the Real Estate Contract that the Defendant had paid the Gunnar Schultz Trust $100,000.00 in earnest money via check. Instead, the Credit Memorandum makes no mention of a down-payment and reflects that the loan amount requested and

12

Main Document    Page 13 of 13

obtained by the Defendant met the Plaintiff's 80/20% loan to value ratio without any sort of down-payment required.

Because the record does not support a finding that the Defendant's balance owed to the Plaintiff is nondischargeable under § 523(a)(2), the Plaintiff's Complaint shall be dismissed. The $251,245.72 balance remaining on the Agreed Judgment entered on February 28, 2012, was discharged on January 30, 2013. A Judgment consistent with this Memorandum will be entered.

FILED:  June 12, 2014

>BY THE COURT
>
>*/s/  RICHARD STAIR, JR.*
>
>RICHARD STAIR, JR.
>UNITED STATES BANKRUPTCY JUDGE